UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:12CV-P12-R

DARCY PERKINS
A/K/A DARNELL PERKINS                                               PLAINTIFF

v.

LARRY CHANDLER *et al.*                                             DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court for initial review of Plaintiff Darcy Perkins's *pro se* amended complaint[1] (DN 10) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the action will be dismissed.

## I.

Plaintiff filed his amended complaint pursuant to 42 U.S.C. § 1983 against Kentucky Parole Board (Parole Board) Chairman Verman Winburn and Parole Board Members George Carson, Monica Edmonds, and Larry Chandler. He sues all Defendants in their individual and official capacities, and as relief, Plaintiff seeks punitive damages and release on parole.

According to the allegations in the complaint,[2] Plaintiff was placed in administrative segregation in October 2007 "pending the completion of an administrative investigation of homosexual activity allegations, which developed into the unfounded submission of a written

---

[1]Plaintiff initiated this action by filing a letter with the Court referencing habeas corpus, indicating that Larry Chandler held him against his will in segregation, mentioning denial of parole, and alleging violation of his constitutional rights. Because it was unclear whether Plaintiff intended to file a petition for writ of habeas corpus or a civil-rights action pursuant to 42 U.S.C. § 1983, the Court directed Plaintiff to clarify. In response, Plaintiff completed and filed a § 1983 form, which is before the Court for screening.

[2]In the body of the amended complaint, Plaintiff references several "exhibits." No exhibits, however, are attached.

disciplinary report that was dismissed upon investigation adjustment committee on or about 10/14/07." In August 2008, Plaintiff "was interviewed by the Parole Board Committee which then deferred him 30 months." He reports submitting several written responses to Defendants "as to the falsity of the homosexual allegations, as his religion is Islamic, which he faithfully practices, and such unfounded homosexual accusations was intended as a defamation of his religion."

Thereafter, on February 17, 2011, Plaintiff states that he was again interviewed by the Parole Board. "Committee members included named respondents Carson and Edmonds, who deffered his conditional release 18 months based on 'poor institutional adjustment' and recommended [Plaintiff] enter a sex offender treatment program while [his] institutional record reflects 10 months of clear conduct." Plaintiff asserts that prior to this Parole Board review, he had never been convicted of any sex offense criminally or institutionally. Thus, claims Plaintiff, "it is obvious that the respondents continued to employ the knowingly false information of homosexual activity and/or to retaliate against him for the practice of his Islamic religion."

Plaintiff, who reports being convicted of a marijuana offense, alleges that during the same February 17, 2011, parole "hearing session as when [he] was denied parole, several inmates with either violent crimes, involving firearm(s) and/or deadly weapons were granted parole, released by the board back into society." He, therefore, claims that the seriousness of the crime, poor institutional adjustment, prior felony and misdemeanor convictions, or probation violation are "not the true basis the board members would deny [him] parole, and place the public at a much higher risk by granting parole to those prisoners with far greater potential to

danger to the public." Rather, claims Plaintiff, the Parole Board members' decision to deny him parole was motivated by "a hidden and personal vendetta."

Plaintiff states that KRS § 439.330 mandates that the Parole Board "'study the case histories of persons eligible for parole, and deliberate on that record.'" He claims that this statute "required the board members to consider 'that record' before them, and not the recorded false and unsupported, and dismissed allegation of homo sexual activity that should not have been contained in the record before them." Plaintiff states that he made an open records request for a copy of the dismissed prison disciplinary report containing the sexual allegations and was informed that no such disciplinary report was contained in his prison file. Thus, claims Plaintiff, "the parole board members only had one other source to learn of the false allegation of homo sexual disciplinary report, from parole board member Larry Chandler who was the warden of [KSR] at time the homo sexual activity allegation." Plaintiff also alleges that he did not receive the written notice of the Parole Board's decision until about 30 days after the hearing in violation of state law. He reports filing a request for reconsideration "[w]hich he received no response from the board's chair person until he then submitted a written complaint to the Governor's Office."

Based on the foregoing allegations, Plaintiff asserts that his First Amendment to the U.S. Constitution "right to the free exercise of his religion and the right to petition the government, for a redress of grievance was violated by the Respondents continuing to punish him based on a recorded unfounded allegations of homosexual activity behavor and when the government refused to redress [his] petition of complaint of the unconstitutional parole board hearing"; that his "U.S. Constitutional 14th Ammendment rights to practice and free exercise of his religion

3

and the right to petition the government and his rights to due process . . . and to equal protection of the laws were violated by the Respondents when they refused and/or aquiescenced to the refusals to grant him a fair, equal consideration of parole"; that his "right to due process were further violated when the Governor himself refused to entertain the non-voting state citizen's petition of complaint"; that the Parole Board "is breaking the Fifth Amendment on Double Jeopardy grounds every time they say someone is defered for 'seriousness of crime'"; and that his rights under Section 1 of the Kentucky Constitution were violated.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the amended complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

### *A.  42 U.S.C. § 1983 Claims*

#### *1. Injunctive Relief*

Plaintiff seeks release on parole.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Because

Plaintiff seeks an immediate or speedier release from custody, his § 1983 claim for such injunctive relief cannot lie and will be dismissed.

### 2. Damages

#### a. Official-Capacity Claims

The Court will dismiss these claims on two bases. First, Defendants, as state officials sued in their official capacities for damages, are immune from liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, none of the Defendants sued in their official capacities for damages are "persons" subject to suit within the meaning of § 1983. *Will*, 491 U.S. at 71 (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (same).

Consequently, the § 1983 official-capacity claims for damages against all Defendants in their official capacities for damages will be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants immune from such relief.

#### b. Individual-Capacity Claims

For Plaintiff to state a claim based upon an alleged violation of due process, he must have a valid liberty or property interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). A liberty or property interest must rise to more than "an abstract need or desire" and must also be based upon more than a "unilateral hope." *Id.* (internal quotation marks and citation omitted). An individual must have a legitimate claim of entitlement. No liberty or property interest exists

here because a convicted person has no particular right to be paroled in Kentucky before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Belcher v. Ky. Parole Bd.*, 917 S.W.2d 584, 587 (Ky. Ct. App. 1996); *Land v. Commonwealth of Kentucky*, 986 S.W.2d 440, 442 (Ky. 1999) ("Kentucky courts have repeatedly held that there is no constitutional right to parole, but rather parole is a matter of legislative grace or executive clemency."). Also, Plaintiff's eligibility for parole under Kentucky's discretionary parole system is not an "atypical and significant hardship" that would elevate it to a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For these reasons, Plaintiff fails to state a due process claim.

Plaintiff also fails to state a double jeopardy claim. The Double Jeopardy Clause applies to judicial proceedings, not parole proceedings. *Sand v. Bogan*, No. 93–2280, 1994 WL 112862, at *2 (6th Cir. Mar. 31, 1994) (citing *Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983)); *see also Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986) ("The double jeopardy clause does not apply to parole revocation proceedings [or to] vacation of a presumptive parole release date."). Here, the Parole Board is denying Plaintiff the privilege of early release from a previously imposed punishment, not subjecting him to double jeopardy. *See Mayrides v. Chaudhry*, 43 F. App'x 74, 745 (6th Cir. 2002) ("The parole board's refusal to grant parole does not increase Mayrides's sentence, nor is parole designed to punish a defendant for the violation of criminal law."); *see also Ellick v. Perez*, 27 F. App'x 489, 490 (6th Cir. 2001) (holding that "parole determinations are not considered criminal punishment for the purposes of the Double Jeopardy Clause") (citing *Kell v. United States Parole Comm'n*, 26 F.3d 1016, 1020 (10th Cir. 1994)). Because Plaintiff fails to state a cognizable double jeopardy claim, it will be dismissed.

As to Plaintiff's First Amendment claims, he alleges that his "right to the free exercise of his religion and the right to petition the government, for a redress of grievance was violated by the respondents continuing to punish him based on a recorded unfounded allegations of homosexual activity behavor and when the government refused to redress [his] petition of complaint of the unconstitutional parole board hearing." Plaintiff wholly fails to allege facts demonstrating how the free exercise of his religion has been hampered. Additionally, it is unclear how he claims his right to petition the government for redress of grievance was violated. He reports receiving a parole hearing and receiving a response from the chair of the Parole Board. For these reasons, Plaintiff fails to state a cognizable First Amendment claim.

Plaintiff also fails to allege an equal protection violation. "In order to state an equal protection claim, a plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class or that the state infringed upon a fundamental right." *Coleman v. Martin*, 363 F. Supp. 2d 894, 902 (E.D. Mich. 2005) (citing *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). While Plaintiff mentions his "Islamic Religion," he alleges no facts even suggesting that Defendants denied his parole because of his religion. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim."). Additionally, there is no fundamental right to parole in Kentucky; prisoners are not a protected class, *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); and homosexuality is not a suspect class. *Equal. Found. of Greater Cincinnati, Inc. v. City of Cincinnati*, 128 F.3d 289, 292-94 (6th Cir. 1997). Thus, Plaintiff has not stated an

equal protection claim based on his membership in a protected class or the state's infringement upon a fundamental right.

> [W]here an equal-protection claim is not based on the government's burdening of a fundamental right or targeting of a suspect class, the Supreme Court has recognized successful equal protection claims brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

*Rondigo, L.L.C. v. Casco Tp., Mich.*, 330 F. App'x 511, 519 (6th Cir. 2009) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (internal quotation marks omitted).

Here, Plaintiff, who was convicted on marijuana charges, alleges that he was denied parole while other prisoners, "with either violent crimes, involving firearm(s) and/or deadly weapons," were granted parole. Plaintiff, however, does not provide facts demonstrating that he and the other prisoners who were granted parole were similarly situated. Moreover, when a parole board's decisions are subjective and discretionary, like here in Kentucky, courts have found that the class-of-one equal protection theory does not apply. *See, e.g.*, *Franks v. Rubitschun*, No. 5:06-cv-164, 2010 WL 1424253, at *8 (W.D. Mich. Mar. 31, 2010) (finding plaintiff's claims relating to inherently discretionary decision of Michigan Parole Board in denying his parole failed to state a class-of-one theory equal protection claim); *Green v. Livingston*, No. 2:08-CV-101, 2009 WL 1788419, at *5 (W.D. Mich. June 19, 2009) ("Parole considerations are the type of discretionary decisions discussed in *Engquist* that typically are 'subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify' . . . . Applying *Engquist*, even an arbitrary parole decision would not violate Petitioner's equal protection rights.") (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604 (2008) (recognizing that class-of-one, rational basis scrutiny is not properly applied to public

employment decisions)); *but see Franks v. Rubitschun*, 312 F. App'x 764, 766 n.3 (6th Cir. 2009) (noting that *Engquist* was specifically limited to the public-employment context and suggesting that *Engquist*'s discussion of discretionary decisionmaking should not control other situations) (dictum).

Finally, "'parole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers.'" *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (quoting *Walter v. Torres*, 917 F.2d 1379, 1384 (5th Cir. 1990)); *see also Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) ("[P]arole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole."); *Warick v. Ky. Justice and Pub. Safety Cabinet*, No. 08-146-ART, 2008 WL 4443056, at *6 (E.D. Ky. Sept. 26, 2008) ("Most circuits now hold that parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole.") (quoting *Belcher v. Ky. Parole Bd.*, 917 S.W. 2d 584, 588 (Ky. App. 1996)) (internal quotation marks omitted); *Hinds v. Tennessee*, 888 F. Supp. 854, 857 (W.D. Tenn. 1995) ("Parole Board members enjoy absolute immunity for actions taken in connection with determining whether to grant or deny parole.").

For all of the foregoing reasons, the individual-capacity claims against all Defendants will be dismissed.

### B. *State-law claims*

Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3).  Because the Court will dismiss all federal claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over the remaining state-law claims and will dismiss those claims without prejudice.  *See Runkle v. Fleming*, 435 F. App'x 483, 486 (6th Cir. 2011) ("[W]hen, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'") (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

  For the reasons above, the Court will dismiss this action by separate Order.

Date:

cc: Plaintiff, *pro se*
   General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005